## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER D. GOINES JR., | : | Civil No. 3:24-cv-2155 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN ADAM OGLE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Peter Goines ("Goines"), an inmate housed, at all relevant times, at the York County Prison ("YCP"), commenced this civil rights action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 7). Named as Defendants are Warden Adam Ogle, Classifications Manager Brian Horner, Correctional Officer Keith Gembe, and Correctional Officer John Hammel.

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 20). The motion is ripe for resolution. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

---

[1] Goines has been released from custody. (*See* Doc. 15).

## I.     Statement of Undisputed Facts[2]

### A.     Facts Related to the June 14, 2024 Assault

On May 1, 2024, Goines was lawfully confined as a sentenced prisoner in the York County Prison.  (Doc. 21 ¶ 1).  Shortly after Goines' admission to the York County Prison, he was classified as a level 3 prisoner, high risk category.  (*Id.* ¶ 2).  Goines was initially placed on a small pod with only seven cells.  (*Id.* ¶ 3).  Goines requested to be transferred to a larger cell, and, on June 11, 2024, he was moved to NC14B which is a larger area of confinement with 16 cells in an elevated tier.  (*Id.*).

Defendants maintain that Goines' total weight score of 14 justified his level 3 high risk classification.  (*Id.* ¶ 4).  The classification score was based upon pending highest

---

[2]     Goines filed a counter statement of material facts (Doc. 31, at 5-6); however, his statement of material facts fails to comply with Local Rule 56.1 which requires a party opposing a motion for summary judgment to "include a separate, short and concise [responsive] statement of the material facts, responding to the numbered paragraphs set forth in" the movant's fact statement.  *See* LOCAL RULE OF COURT 56.1. Goines' responsive fact statement (Doc. 31, at 5-6) contains eight unnumbered paragraphs, and fails to correspond to the 21-paragraph concise statement of material facts filed by Defendants (Doc. 21; *see also* Doc. 27).  The averments of Goines' responsive fact statements are entirely independent of those in Defendants' filing, and the paragraphs of Goines' submission do not correlate in any meaningful way to the paragraphs in Defendants' statement.  In sum, Goines' document does not comply with Local Rule 56.1's requirement of parity between the two filings and Goines does not respond to the majority of Defendants' fact statements.  Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants that Goines has not contested.  *See* LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance"); *see also* Doc. 30 ¶ 2 (advising Goines that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).  To the extent that Goines disputes Defendants' fact statements, the Court cites to Goines' statement of facts.

crimes, two counts of strangulation and prior convictions of robbery, terroristic threats, reckless endangerment, and assault. (*Id.*).

Defendant Brian Horner, the Classification Officer, approved the transfer to accommodate Goines' request and to open the smaller pod to another inmate who was best suited to confinement in a smaller pod. (*Id.* ¶ 5). Goines was placed with other level 3 classified inmates that was consistent with the Prison's Classification Policies. (*Id.* ¶ 6). Defendants maintain that, at no time was there any indication that the transfer would expose Goines to any foreseeable risk of harm. (*Id.* ¶ 7).

On June 14, 2024, at 6:03 a.m., Goines was suddenly assaulted in his cell 14B and severely injured by five other inmates. (*Id.* ¶ 8). The assailants left the cell at 6:05 a.m. (*Id.*). This assault was caused by a dispute concerning the possession or use of an electronic tablet. (*Id.*).

Defendants maintain that, at no time before or after the transfer of Goines to NC14B, did Defendant Warden Adam Ogle or Defendant Classification Officer Brian Horner, or any other correctional officer, suspect that Goines was at risk of harm from any other inmate and especially those inmates that injured him on June 14, 2024. (*Id.* ¶ 9). The assault of Goines was caused by a dispute over the use of a tablet, of which Defendants had no notice or warning. (*Id.* ¶ 10).

Defendant Correctional Officer Keith Gembe discovered Goines lying on the floor of his cell. (*Id.* ¶¶ 12, 14). Defendant Gembe called a medical emergency. (*Id.*). Defendant

Correctional Officer John Hammel received an alert of a medical emergency in cell 14 and found Goines in cell 14 suffering from serious injuries and helped to revive him. (*Id.* ¶ 13). Defendant Hammel and Defendant Gembe did not have any knowledge that Goines was in danger of being assaulted at any time, for any reason, before the morning of June 14, 2024 at 6:10 a.m. (*Id.* ¶ 15).

The affidavit of Joseph Johnson, Deputy Warden of Security at the York County Prison, contains a transcript of a conversation that was obtained from fixed surveillance and body camera that explains the time and how Goines was assaulted on June 14, 2024. (*Id.* ¶ 16). The conversation confirms that the assault of Goines was "about a tablet" and that Goines did not know that he was going to be jumped and that it happened unexpectedly and occurred on June 14, 2024 between 6:03 a.m. and 6:05 a.m. (*Id.* ¶ 11). The transcript contains the following conversation between Goines and Lieutenant Curry:

> 6:16 a.m./01:09 Inmate Goines: "I went downstairs, um, to get a razor. I know that the two young boys up at the top of the steps like waiting on me. So, uh, I went back in my cell and one boy was like, what's up pussy? G-O-I-N-E-S. And uh, he came to my cell. But all the other, I guess you must have warned everybody else to come upstairs because they all start running up there and just ran in my cell punching on me"

> 6:17 a.m./01:42 Lt. Curry: "Do you know what it was about?"

> 6:17 a.m./01:43 Inmate Goines: "Over a tablet?..."

> 6:18 a.m./02:47 Inmate Goines: "I ain't know they was gonna jump me though..."

(*Id.* ¶ 17; *see also* Doc. 21-6, at 6-7).

Deputy Warden Johnson confirmed that the cause of the attack on Goines was over a tablet, an electronic device used by inmates for entertainment, research and communication with family and others outside the prison. (Doc. 21 ¶ 18). There are only about half of the number of tablets as inmates and the devices must be shared. (*Id.*).

On or before June 14, 2024, none of the Defendants had any reason to believe that Goines was at a serious risk of serious harm by being attacked by other inmates who were confined with him at the York County Prison. (*Id.* ¶ 19). On the morning of June 14, 2024, Goines did not know or suspect that he was at a serious risk of attack by other confined inmates in his pod. (*Id.* ¶ 20). He knew from his orientation that if he was in danger of attack from other inmates, he had the right to separate confinement to avoid conflict. (*Id.*).

On June 14, 2024, Defendants maintain that they were not recklessly indifferent to the medical needs of Goines. (*Id.* ¶ 21). A medical emergency was called immediately for Goines. (*Id.*). A nurse came to Goines' cell when he was revived, and he unexpectedly became very difficult to manage—he was insubordinate and virtually uncontrollable. (*Id.*). It was necessary to place restraints on him so that he could be transported to the medical department. (*Id.*). A nurse examined Goines and cleared him for continued confinement in another cell. (*Id.*). Defendants maintain that Goines' conduct concealed the fact and the full extent of his injuries. (*Id.*).

Goines asserts that, following the assault, he was transported to an outside hospital and remained there for three days. (Doc. 31, at 6). Upon his return to the York County

Prison, Goines was placed in segregation and confined in unsanitary conditions, such as placement in a cell with mold and the inability to shower for four days. (*Id.*).

      B.    <u>Facts Related to Exhaustion of Administrative Remedies</u>

Defendants aver that Goines failed to identify Defendants Ogle, Horner, Gembe, and Hammel in his grievance related to June 14, 2024 incident. (Doc. 27, at 1 ¶ 1). Goines counters that he fully exhausted his administrative remedies, despite not being provided grievance forms for "several days." (Doc. 31, at 5-6).

At all relevant times, the York County Prison Board had in place an inmate complaint review administrative system, which is set forth in the York County Prison's operation manual and contained in the York County Prison Inmate Handbook. (Doc. 27, at 20 ¶¶ 2-3; Doc. 27, at 6-18, 22-27). The administrative system provides that inmates may recover, *inter alia*, money damages for a violation of their rights while confined at YCP. (Doc. 27 at 3 ¶ 3; Doc. 27, at 14). The YCP Inmate Handbook sets forth detailed, specific instructions to be followed by inmates. (Doc. 27, at 20 ¶ 4). Grievances are to be filed within 10 days of the acts or omissions or conditions that form the basis of the complaint. (Doc. 27, at 24-25). The grievance "shall identify the person(s) or entity that has caused the filing of the grievance and shall also briefly describe the conduct, actions or conditions to which the inmate believes he/she/they should be given relief." (*Id.* at 25). Complaints arising from multiple events must be filed in separate grievances. (*Id.*). If there is an immediate threat to

an inmate's welfare, the grievance is considered an emergency and treated accordingly by the grievance coordinator. (*Id.* at 7-9).

The grievance coordinator issues an initial decision. (*Id.* at 25). There is an appeal process which allows for an appeal of the grievance coordinator's decision to the Deputy Warden, an appeal from the Deputy Warden to the York County Solicitor, and, finally, an appeal from the Solicitor to the York County Prison Board. (*Id.* at 25-26). A grievance is not exhausted unless all reviews and appeals are timely taken and denied. (*Id.* at 26).

Goines received a copy of the Inmate Handbook and was familiar with the administrative system. (Doc. 27, at 20 ¶ 6; Doc. 21-8, at 7-8).

## II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record…or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.    Discussion

Defendants seek summary judgment on the following grounds: (1) Goines failed to state a failure to protect claim; (2) Goines failed to state a failure to intervene claim; (3) Goines failed to state a failure to train/supervise claim; (4) Goines failed to state an inadequate medical care claim; and (5) Goines failed to properly exhaust his administrative remedies. (Docs. 22, 28). The Court begins its analysis with the threshold question of whether Goines has exhausted his administrative remedies.

### A.    Exhaustion of Administrative Review[3]

Defendants seek an entry of summary judgment based on Goines' failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* (Doc. 28).

The PLRA requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). The PLRA "exhaustion requirement applies to all inmate suits about prison life,

---

[3]    Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 25).

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has

been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482

F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of

the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d

Cir. 2000) (same). "[I]t is beyond the power of [any] court...to excuse compliance with the

exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*,

28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable

grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The

PLRA requires not only technical exhaustion of the administrative remedies, but also

substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also*

*Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable

considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v.*

*Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if

the prisoner can show that the administrative remedies were unavailable to him. *See*

*Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires

only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are

'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  "An administrative remedy is unavailable when it "operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

As stated, the YCP Inmate Handbook has specific requirements for grievances submitted by inmates.  (Doc. 27, at 20 ¶ 4).  Those requirements include, among other things, that the grievance "identify the person(s) or entity that has caused the filing of the grievance and…briefly describe the conduct, actions or conditions to which the inmate believes he/she/they should be given relief."  (Doc. 27, at 25).

Defendants assert that Goines failed to name them in his grievance related to the June 14, 2024 incident, as required by YCP policy.  (Doc. 27, at 1 ¶ 1).  Defendants have submitted the affidavits of Donald Reihert, Solicitor of the YCP Board, and Valerie Conway, Deputy Warden of Centralized Services at YCP, attesting that Goines did not exhaust his remedies with respect to his claims against Defendants Ogle, Horner, Gembe, and Hammel.  (Doc. 27, 4 ¶ 8; Doc. 27, at 20 ¶ 6).  Deputy Warden Conway attests that Goines failed to submit a grievance identifying Defendants Ogle, Horner, Gembe, and Hammel as violating his rights or failing to protect him from harm at the hands of other inmates.  (Doc. 27, at 20 ¶ 6).  Defendants have not submitted copies of Goines' grievance and grievance appeals.

Nor has Goines submitted a copy of his grievance or grievance appeals. But Goines has submitted evidence that he filed a final appeal to Solicitor Reihert with respect to grievance number 061824L-2595. (Doc. 31, at 4). Solicitor Reihert denied this appeal on November 14, 2024, and advised Goines that he has "now exhausted [his] administrative remedies required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)." (Id.).

Based on the record, the Court concludes that a genuine issue of fact exists as to whether Goines properly exhausted his administrative remedies. The Court will deny summary judgment based on failure to exhaust.

B.    Failure to Protect

With respect to Eighth Amendment failure-to-protect claims, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). However, not "every injury suffered by one prisoner at the hands of another... translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Therefore, for a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim, they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) the prison officials involved had a sufficiently culpable state of mind (the subjective element). See id. Specifically, the inmate must allege facts showing that the prison official knew of

and disregarded an excessive risk to inmate health or safety. *See Hamilton*, 117 F.3d at 746.

Actual knowledge may be proven circumstantially in situations where the general danger was obvious. *See Farmer*, 511 U.S. at 842. For example, if the prisoner presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-43 (quotation omitted).

Here, there is no evidence that Goines received any threats of violence prior to the incident on June 14, 2024, there is no evidence that there were any previous problems between Goines and the other inmates that assaulted him, and there is no evidence that the other inmates had a history of assaults. Indeed, Goines acknowledges that he was "jump[ed]" and the dispute was over the use of a tablet. (Doc. 21-6, at 7). It is undisputed that Goines did not inform anyone that he was in imminent danger of being attacked by his assailants prior to the incident—nor could he, as he concedes that "[he] [didn't] know they [were going to] jump [him]." (*Id.*). Additionally, on May 15, 2024, Goines completed his Inmate Orientation and Intake Acknowledgement Form and indicated that he did not have

any separation needs and did not need to be separated from any other inmates. (Doc. 21-8, at 8, 12).

The Court finds that a reasonable jury could not conclude that Defendants knew of and disregarded an excessive risk to Goines' health or safety. *See Hamilton*, 117 F.3d at 746. Accordingly, the Court will grant Defendants' motion with respect to the failure to protect claim.

C.    Failure to Intervene

Goines also asserts that Defendants failed to intervene in the June 14, 2024 assault, in violation of the Eighth Amendment. (Doc. 7, at 3; Doc. 14, at 2). Correctional officers may be liable under Section 1983 for failing to intervene if they had "a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). A valid failure to intervene claim requires: (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. *Id.* at 650-51.

Goines does not set forth any evidence establishing that Defendants had a "realistic and reasonable opportunity to intervene." *Id.* at 651. The record is devoid of evidence that Defendants were aware that Goines was being assaulted and had any opportunity to intervene. Moreover, the undisputed evidence establishes that the assault occurred on June 14, 2024 between 6:03:48 and 6:05:44—lasting approximately two minutes. (Doc. 21 ¶ 8; Doc. 21-6, at 2 ¶ 2; Doc. 21-6, at 3 ¶ 6). The undisputed evidence further establishes

that at 6:05:44, correctional staff entered the pod to conduct routine security rounds and

Defendant Gembe found Goines in his cell and immediately called for emergency

assistance.  (Doc. 21-6, at 3 ¶¶ 7-8).  There is simply no evidence that Defendants ever had

"a realistic and reasonable opportunity to intervene" to protect Goines but refused to do so.

*Smith*, 293 F.3d at 650-51.  Defendants are entitled to summary judgment on the Eighth

Amendment failure to intervene claim.

        D.    Failure to Train/Supervise

        Goines asserts that Defendant Warden Ogle failed to properly train and supervise

the York County Prison staff.  (Doc. 7, at 3; Doc. 14, at 1).  He further asserts that all

Defendants failed to "monitor vulnerable individuals," failed to "properly classify inmates[,]"

and failed to "properly staff the prison."  (Doc. 14, at 1).

        Section 1983 claims against a municipal defendant can proceed in two ways.

*Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  The first is by showing an unconstitutional

municipal policy or custom caused the underlying violation.  *Porter v. City of Philadelphia*,

975 F.3d 374, 383 (3d Cir. 2020).  The second is by proving the violation resulted from a

"failure or inadequacy" on the part of the municipality that demonstrated deliberate

indifference to the risk that violation would occur.  *Forrest*, 930 F.3d at 105-06.

        A policy exists "when a decisionmaker [with] final authority…issues an official

proclamation, policy, or edict."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d

Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  A

custom, by contrast, is "a given course of conduct," which, "although not specifically endorsed or authorized by law, is so well-settled as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). To hold a city liable for its unconstitutional policies or customs, the policy or custom must have proximately caused the plaintiff's injuries. *Estate of Roman*, 914 F.3d at 798.

A plaintiff pursuing a claim under a failure or inadequacy theory must demonstrate "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. The plaintiff must show: (1) the municipal defendants know employees will confront a given situation; (2) the situation presents a "difficult choice" for employees or there is a history of employees' mishandling the situation; and (3) the employees' wrong choice "will frequently cause the deprivation of constitutional rights." *Forrest*, 930 F.3d at 106.

To show deliberate indifference for purposes of failure to train or supervise claims, it is ordinarily necessary to plead a "pattern" of untrained or unsupervised employees violating constitutional rights. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). If the plaintiff's failure to train or supervise claim is predicated on a single constitutional violation, he must show the violation was a "highly predictable consequence" of that failure. *Id.* at 225 (quoting *Connick*, 563 U.S. at 64).

Goines does not assert an unconstitutional policy or custom caused his injuries. Rather, he asserts that his injuries were the result of Defendants' failure to adequately supervise/staff prison employees or train them to properly classify and monitor inmates. (Doc. 7, at 3; Doc. 14, at 1). Goines has not set forth any evidence that Defendants were deliberately indifferent to the risk that without better supervision or training, officers would violate his constitutional rights. He offers nothing more than his conclusory assertion that Defendants failed to properly train staff at the prison in the classification and monitoring of inmates. (Doc. 14, at 1). However, "conclusory and general claims of failure to screen, train, or supervise employees" are not enough. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014). Goines has also not presented any evidence that Defendants were on notice of a need to train and supervise prison staff in the classification and monitoring of inmates, or that they were on notice of rampant assaults at the York County Prison. Without "facts detailing specific deficiencies in any training programs," Goines cannot maintain his claim that Defendants failed to monitor and properly classify inmates and failed to properly staff the prison, (Doc. 14, at 1). *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 433 (E.D. Pa. 2020) (citations omitted).

Goines has also failed to establish a single-incident theory of liability. *See Thomas*, 749 F.3d at 225. He provides only conclusory and generic assertions and has not presented any evidence connecting his injury to a specific shortcoming in Defendants' training or supervision. (*See* Doc. 14).

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Goines has failed to meet this burden. Consequently, Defendants are entitled to summary judgment on this claim.

### E.    Inadequate Medical Care Claim

Goines also sets forth a claim for deliberate indifference to his serious medical need. (Doc. 7, at 3; Doc. 14).

To state an Eighth Amendment inadequate medical care claim, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011) (citing *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is serious if it has been diagnosed by a physician as requiring treatment or so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to a prisoner's

18

health. *Farmer*, 511 U.S. at 837. However, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008). Mere negligence in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Disagreement as to proper care also does not support a finding of deliberate indifference. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

There is no doubt that Goines has proven a serious medical need. The question that remains is whether there are genuine issues of material fact as to whether Defendants were deliberately indifferent to Goines' serious medical need. On the record before the Court, Goines cannot show deliberate indifference to his serious medical need.

The record confirms that immediately after the incident on June 14, 2024, Goines was treated by medical personnel in his cell, escorted to the medical department, and transferred to an outside hospital for further treatment. (Doc. 21-3, at 2 ¶¶ 7-8; Doc. 21-5, at 2 ¶ 6; Doc. 21-7, at 2-4 ¶¶ 3, 6-7, 9, 11-12, 14; Doc. 21-7, at 6-7). On June 14, 2024, at 6:27 a.m., a nurse completed an evaluation form following her treatment of Goines. (Doc. 21-7, at 6-7). The nurse noted that Goines stated, "he was jumped in [his] cell over a tablet" and complained of pain in his face. (*Id.*). The nurse documented that Goines had swelling of his eyes, an abrasion to his right eye, a bloodshot left eye, redness to his upper back/neck area, and a small skin tear on his right elbow with no bleeding. (*Id.*).

Once Goines was transported to the outside hospital, he asserts that he remained in the hospital for three nights, and upon his return to YCP, he was placed in segregation. (Doc. 31, at 5). Goines avers that the doctor at the outside hospital informed him that he must have a follow-up appointment in 10 days. (Doc. 14, at 1-2). Goines maintains that "[t]he prison failed to have him evaluated with in that time frame and it was well over 30 days until he was seen by a physician in the York area." (*Id.* at 2) (sic).

As the record demonstrates, and as Goines has acknowledged, he was treated in his cell on June 14, 2024 and he was sent to the medical department on June 14, 2024. (Doc. 21-3, at 2 ¶¶ 7-8; Doc. 21-5, at 2 ¶ 6; Doc. 21-7, at 2-4 ¶¶ 3, 6-7, 9, 11-12, 14; Doc. 21-7, at 6-7). After a nurse treated Goines in the medical department, he was placed in a cell. (Doc. 21-7, at 3-4 ¶¶ 9, 11-13). Approximately 30 minutes later, he was transported to an outside hospital for further treatment. (Doc. 21-7, at 4 ¶ 14). Goines faults Defendants for not returning him to the hospital for a follow-up visit within 10 days. (Doc. 14, at 2). He maintains that he was not treated by an outside physician until approximately 30 days later. (Doc. 14, at 2). Goines thus acknowledges that he received medical treatment for his injuries and does not assert a denial of medical treatment. At best, the failure to timely send Goines to an outside hospital for a follow-up appointment may state a negligence claim which does not, as a matter of law, rise to deliberate indifference to a serious medical condition required to establish an Eighth Amendment violation.

20

In any event, Defendants maintain that PrimeCare Medical was contracted with the York County Prison to provide medical services to inmates and all of Goines' medical care was provided by PrimeCare Medical. (Doc. 21-1, at 3 ¶ 7; Doc. 21-5, at 2 ¶ 6). None of the named Defendants are medical personnel. Defendants entrusted the medical unit—staffed by medical professionals of PrimeCare Medical—with Goines' care. As the Third Circuit has explained:

> If a prisoner is under the care of medical experts…, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Spruill*, 372 F.3d at 236. Defendants, who are not health care providers, could reasonably rely on the medical care providers that treated Goines.

As stated, to survive a motion for summary judgment, Goines cannot rely merely on the unsupported allegations of the complaint (which is precisely what Goines does here) and must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson*, 477 U.S. at 252. At this stage of the proceedings, Goines must provide some evidence that Defendants delayed his medical care, delayed his transport to an outside hospital, or outright denied him medical treatment. He has failed to do so and has thus failed to create a genuine issue of material fact regarding whether Defendants were deliberately indifferent to his serious medical needs. The Court will grant Defendants'

motion for summary judgment for lack of evidence that Defendants were deliberately indifferent to Goines' serious medical need.

### F.   Fourteenth Amendment Claim

To the extent that Goines asserts a Fourteenth Amendment due process violation (*see* Doc. 14), he failed to state a claim for relief.  Defendants do not address this claim. (*See* Docs. 22, 28).  The Court will *sua sponte* address the Fourteenth Amendment claim.

To set forth a due process violation in the context of Goines' claims, he must, *inter alia*, establish that the officers' conduct amounted to more than "lack of due care"—e.g., something more than mere negligence.  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").  Besides his conclusory allegation that YCP officers "had to be told more than twice to check on what was going on in the pod where [Goines] was housed[,]" (Doc. 7, at 3), Goines has failed to set forth any evidence that might support an inference of wrongdoing greater than lack of due care on Defendants' part.  Therefore, Goines fails to establish a Fourteenth Amendment claim.  *See Davidson*, 474 U.S. at 347 ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.") (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986)).

## IV.     Conclusion

For the foregoing reasons, Defendants' Rule 56 motion for summary judgment will

be granted in part and denied in part.  (Doc. 20).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January ___, 2026